

```
Instr:200706110014607        06/11/2007
Pages:6    F:$24.50           9:30AM
Michele Mustello              T20070012500
Butler County Recorder        MEPPHILLIP
```



Map Reference

MAP 160-4F31-14A1;
LOCATION 160-4F31-25E

LEASE #: PA10191

# AFFIDAVIT FILED

## OIL AND GAS LEASE

from

The Olive M. Marburger Living Trust

to

**MAIL TO:** PHILLIPS PRODUCTION COMPANY
502 KEYSTONE DRIVE
WARRENDALE, PA 15086

Date of Lease ___ February 8, 2007 ___

Term: ___ 5 ___ Years    Expires ___ February 8, 2012 ___

Payments Due ___ February 8th ($976.97 annually) ___

No. of Acres ___ 97.69 ___

Township of ___ Forward ___

County of ___ Butler ___

State of Pennsylvania

Payee ___ The Olive M. Marburger Living Trust ___

___ 1477 Mars-Evans City Road ___

___ Evans City, PA 16033 ___

I hereby CERTIFY that this document is recorded in the Recorder's Office of Butler County, Pennsylvania

Michele M. Mustello - Recorder of Deeds

**RECORDER'S DATA**

Received for Record...................... 20..................

Recorded.......................................... 20..................

In............................, Book, Volume................ Page..................

...............................................................Recorder

of....................................................Pennsylvania



EXHIBIT A

## OIL AND GAS LEASE

Made this 8th day of February 2007, by and between **Richard P. Marburger, Trustee of the Olive M. Marburger Living Trust dated February 18, 1995 of, 1477 Mars-Evans City Road, Evans City, Pennsylvania 16033** hereinafter designated as lessor, and **PHILLIPS PRODUCTION COMPANY, a Pennsylvania corporation, of 502 Keystone Drive, Warrendale, Pennsylvania 15086,** hereinafter designated lessee.

WITNESSETH, that the said lessor for and in consideration of one dollar in hand paid by the said lessee, the receipt whereof is hereby acknowledged, and the further consideration of the agreement hereinafter contained, to be done, kept and performed by said lessee, hereby demises and lets unto said lessee, its successors and assigns, all that certain tract of land situate in **Forward Township, Butler County, Commonwealth of Pennsylvania,** bounded and described as follows:

Tax ID #: 160-4F31-14A1 containing 89.202 acres in Forward Township

Bounded substantially by lands now or formerly owned as follows;

On The North By: O. Marburger (160-4F31-16), Other Tracts
On the East By: O. Marburger (160-4F31-16), R. Kummer (160-4F31-19A)
On the South By: M. Morris (160-4F31-24), BASF Corporation (160-4F31-25), Other Tracts
On the West By: Marburger Farm Dairy Inc. (160-4F31-14)
being part of the lands described in Book 2536 Page 0742

Tax ID #: 160-4F31-25E containing 8.495 acres in Forward Township

Bounded substantially by lands now or formerly owned as follows;

On The North By: O. Marburger (160-4F31-14A1)
On the East By: O. Marburger (160-4F31-14A1)
On the South By: E. Wilson (160-4F31-25E1)
On the West By: O. Marburger (160-4F31-14A1)
being part of the lands described in Book 2536 Page 0730

and described for the purposes of this lease as containing **97.697 acres,** whether actually more or less, and including all contiguous or appurtenant submerged or riparian lands owned by Lessor (herein collectively described as the "Leasehold")

TO HAVE AND TO HOLD the said premises for the sole and only purpose of testing, drilling and operating for oil and gas and of storing in any underlying strata therein by any means and withdrawing therefrom by any means oil or gas produced from the same or other lands, with the exclusive right to operate the same for the term of **Five (5) years,** and as long thereafter as oil or gas is produced, stored in , or withdrawn therefrom by any means, or operations for oil or gas or the storage thereof are being conducted, including the right to commence operations for drilling a well or subsequent wells for said purposes at anytime during the term of this lease, or at anytime thereafter oil or gas is being produced, stored in, or withdrawn therefrom, or operations are being conducted thereon for said purposes and to complete the same; also the right to sublease and subdivide the leased premises, together with a right of way to all places for testing, operating or storing, and also a right of way for pipe lines to convey oil, gas, water or steam off, on or across the same, including but not limited to storage lines, and including a right of way for power, telephone and telegraph lines and necessary appurtenances, including the right to conduct geophysical and other exploratory tests, as long as said lessee, its successors or assigns, desires to maintain the same. Lessor agrees that lessee may enter upon the leased premises, search for and clean out any abandoned oil or gas well, and such well shall then be considered to have been drilled under the terms of this lease and the same may be properly plugged and abandoned again or refitted and utilized by lessee for the production or storage of gas.

**LESSOR'S COVENANTS.** Lessor hereby covenants that he is seized of an indefeasible fee simple estate in the land herein before described, together with all the underlying oil and gas, and that he will forever warrant and defend the leasehold estate hereby demised unto the lessee against the lawful claims and demands of all persons whomsoever, and that lessee shall have the exclusive, full, free and quiet possession of said described premises for the purposes and during the term herein set forth. Lessor further agrees that the lessee at its option may pay and discharge, when defaulted, any taxes, mortgages or other liens existing, levied or assessed on or against the above described lands, and in the event it exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying to the discharge of any such mortgage, tax or other lien, any royalty or rentals accruing hereunder.

**UNITIZATION.** Lessee is hereby granted the right to pool and unitize the Onondaga, Oriskany or deeper formations under all or any part of the land described above with any other lease or leases, land or lands, mineral estates, or any of them whether owned by lessee or others, so as to create one or more drilling or production units. Such drilling or production units shall not exceed 640 acres in extent and shall conform to the rules and regulations of any lawful governmental authority having jurisdiction in the premises, and with good drilling or production practice in the area in which the land is located. In the event of the unitization of the whole or any part of the land covered by this lease, lessee or designated operator shall before or after the completion of a well, record a copy of its unit operation designation in the County wherein the leased premises is located, and mail a copy thereof to the lessor. In order to give effect to the known limits of the oil and gas pool, as such limits may be determined from available geological or scientific information or drilling operations, lessee may at any time increase or decrease that portion of the acreage covered by this lease which is included in any drilling or production unit, or exclude it altogether, provided that written notice thereof shall be given to lessor promptly. As to each drilling or production unit designated by the lessee, the lessor agrees to accept and shall receive out of the production or the proceeds from the production from such unit, such proportion of the royalties specified herein, as the number of acres out of the lands covered by this lease, which may be included from time to time in any such unit, bears to the total number of acres included in such unit. The commencement, drilling, completion of or production from a well on any portion of the unit created under the terms of this paragraph shall have the same effect upon the terms of this lease as if a well were commenced, drilled, completed or producing on the land described herein. In the event, however, that a portion only of the land described in this lease is included from time to time in such a unit then a proportionate part of the delay rental, hereinafter provided, shall be paid on the remaining acreage.

**ROYALTY.** IN CONSIDERATION of the above demise, lessee agrees to market the oil produced from the premises, provided the quality of said oil is acceptable for marketing and the amount of production is deemed sufficient by lessee to economically market the same. Lessee further agrees to pay lessor a royalty equal to one-eighth (1/8) of the proceeds received from time to time by lessee for all oil so marketed, less lessor's pro rata share of any severance or excise tax imposed by any governmental body. Payment of said royalty shall be made on or about the 25th day of the month for all oil so marketed during the preceding month.

Should any well not produce oil, but produce gas (except storage gas) and the gas produced therefrom be sold off the said premises, the consideration to said lessor for the gas from each well completed and from which well gas is produced, metered and sold shall be as follows:

Royalty equal to one-eighth (1/8) of the proceeds received from time to time by lessee for all gas (except storage gas) produced, metered and sold, less lessor's pro rata share of any severance or excise tax imposed by any governmental body. Payment of said royalty shall be made on or about the 25th day of the month for all gas produced, metered and sold during the preceding month. The time and method of producing, metering, delivering and selling gas produced from any well on the leased premises and the amount thereof that shall be used or sold within any period of time shall be entirely within the sole discretion of the lessee.

RESERVE GAS. By written request to the lessee, lessor may reserve from the leased premises through any well thereon producing gas (except a well or wells utilized for storage), provided the gas pressure is high enough, gas for use in one dwelling on said premises for domestic purposes to the extent of **400,000** cubic feet per year, or such part thereof per year as lessor requires; subject, however, to the operation and pumping by lessee of its wells and pipelines on the premises, the lessee to make the necessary connection and lessor to assume all risk in using the gas. User shall indemnify and hold Lessee harmless from all causes of loss other than those caused by Lessee's sole negligence. Said connection must be made at a place designated by lessee and may be at any gas line of lessee on said premises; subject, however, to the right of lessee at any time to abandon, take up, remove, repair or change any of its lines or abandon any of its wells, lessee not being liable for any expense, shortage or failure of gas which may arise by reason of said changes, lack of gas pressure or abandonment. Lessor agrees to pay for all gas used in excess of the quantity reserved at the then existing price established by lessee and further agrees that lessee, at its option, may deduct from any royalty accruing to lessor hereunder any amount owed to lessee by reason of lessor's use of gas in excess of the quantity of gas which may be reserved under the terms hereof. Said established price shall not exceed the highest posted domestic rate for any public utility in the county in which the leased premises is located, and measurement and regulation shall be by meter furnished by lessee and regulators furnished by lessor and set at the tap on the line. If lessor's use of the gas reserved at any time interferes with lessee's operation of the leased premises, lessor agrees at the option of lessee, and after receipt of written notice, to discontinue the use of the gas reserved and to accept in lieu thereof and in full consideration therefore, a cash payment of Two Hundred Dollars ($200.00) per annum. If lessor resides on leased premises and elects in writing not to utilize any reserve gas, lessee agrees to make a cash payment of Two Hundred Dollars ($200.00) per annum in lieu thereof.

Lessor is to have the free use and enjoyment of the premises except the parts necessary or convenient for lessee's operations hereunder.

Lessee is to have the free use of oil, water and gas from the premises for lessee's operations on the premises, and the right at any time during or after the term of this lease to remove from the premises all machinery, pipe lines, buildings and fixtures belonging to it (including the right to draw and remove casing) whether placed thereon under this or any former lease.

DELAY RENTAL. PROVIDED, HOWEVER, that this lease shall become null and void and all rights hereunder shall cease and determine, unless operations for the drilling of a well on said premises for oil or gas, the storage of gas, or as provided in above Unitization Clause, are commenced within forty-five (45) days from the date hereof, or unless said lessee shall pay **Nine Hundred Seventy-six and 97/100 Dollars ($976.97)** every year in advance for each additional year the commencement of such operations is delayed from the time above mentioned for the commencement of operations, until operations are commenced, or unless storage rentals or storage well rentals, as hereinafter provided, are paid. It is agreed, however, that this lease shall not be forfeited for lessee's failure to pay any rentals until lessee has received written notice by certified mail of such default and shall fail for a period of fourteen days after receipt of such notice to pay same. When operations are commenced for the drilling of a well for oil or gas, all rentals cease, except as provided in above Unitization Clause, and the work is to be prosecuted with due diligence to completion.
Upon the drilling of a nonproductive oil or gas well on the premises or on any other land pooled or unitized with this lease, or if no royalty is being paid for gas from any other well or wells on the leased premises, lessee may continue to hold the leased premises or unitized acreage upon the reinstatement of the payment of the delay rental, hereinbefore provided, until the expiration of the original term of this lease, or until operations are again commenced for drilling a well during the original term of this lease.
A payment of delay rental, gas royalty, storage rental or storage well rental to said lessor mailed on or before the date due to:

**The Olive M. Marburger Living Trust dated February 18, 1995 of, 1477 Mars-Evans City Road, Evans City, Pennsylvania 16033**

or to such other address as payee may designate in writing shall be good and sufficient payment for same, as provided for in this lease.

~~STORAGE. In full compensation for the storage rights herein granted and in lieu of all delay rental or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata or horizons where gas may be stored, as herein provided, lessee covenants and agrees to pay lessor, when no wells on the leased premises are utilized for the storage of gas, _____ dollars ($_____) every year in advance, beginning at the next payment date after gas shall have been stored under the terms of this lease and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas in which event lessee shall continue paying storage rental to lessor and, in addition pay a storage well rental of Two Hundred and No/100 Dollars ($200.00) per well every year in advance, as long as such well shall be so utilized; subject to lessee's right of cancellation or surrender. Lessee agrees to give lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas. It is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the lessee shall be the sole judge as to whether gas is being stored within the leased premises and that its determination shall be final and conclusive.~~  *RPM*

TRANSFERS AND ADVERSE INTERESTS. Upon receipt of notice of knowledge of change of ownership, or of any tax sale or judicial sale, or adverse claim affecting title to the lease premises, or death or incapacity of the designated payee, or upon refusal of the lessor to accept payments hereunder, or upon failure of the lessor to notify lessee of change of address to which payments are to be mailed, lessee may at its discretion make payments as aforesaid, or without further notice, may hold any or all payments until title is established and certified to lessee and a new payee designated by the lessors or owners of the whole title, or until lessor gives written notice of his intention to accept payments hereunder, or until lessor shall furnish lessee with change of address in the event such change shall have occurred.

In case of transfer of title to any part of the premises leased, the owners shall be entitled to delay rentals or storage rentals according to their respective acreage; and to all oil or gas royalty or storage well rental from wells located on that portion owned by them respectively, payment of which rental or royalty may be made to the lessor as agent for all such owners or to them individually. In case of such transfer, the gas hereinbefore excepted and reserved for each calendar year shall be prorated among the royalty interests in accordance with the number of producing gas wells located in said year on that portion owned by each.

SURRENDER. Lessee at any time and from time to time, may surrender this lease as to all or any part or parts of the premises by recording an appropriate instrument of surrender in the proper county, and thereupon this lease, and the rights and obligations of the parties hereunder, shall terminate as to the part or parts so surrendered. Upon each surrender as to any part or parts of the premises, the rentals and minimum payment as specified shall be proportionately reduced on an acreage basis, and lessee shall have reasonable and convenient easements for pipe lines, pole lines, roadways, and other facilities through and over the portions of the premises surrendered for the purpose of continuing operations on the portions of the premises retained.

FORCE MAJEURE. In the event lessee is rendered unable in whole or in part, by a force majeure to carry out its obligations under this lease, other than to make payments of amounts due hereunder, its obligations so far as they are affected by such force majeure shall be suspended during the continuance of an inability so caused. The term "force majeure" as used herein shall be Acts of God, strikes, lockouts, or other industrial disturbances, acts of the public enemy, wars, blockades, riots, epidemics, lightning, earthquakes, explosions, accidents or repairs to machinery or pipes, delays of carriers, inability to obtain materials or rights of way on reasonable terms, acts of public authorities, or any other causes, whether or not of the same kind as enumerated herein, not within the control of the lessee and which by the exercise of due diligence lessee is unable to overcome.

MINIMUM PAYMENT. It is agreed that the total payments to lessor hereunder shall never be less than an amount equivalent to the rental rate per acre, proportioned to lessor's interest, for any one yearly period this lease is in force and effect as herein provided.

~~RENEWAL OF LEASE. Prior to the end of the primary term hereof, the lessee shall have the option to renew this lease for an additional period of _____ years. The lessee may exercise this option by paying to the lessor the sum of $_____, which payment shall be regarded as an option payment and not as a delay rental. If lessee exercises this option to renew, the lease shall continue under the same terms and conditions, including lessee's obligation to pay delay rentals as set forth in the paragraph above named "DELAY RENTAL", for said additional period, and so long thereafter as oil, gas or associated hydrocarbons are produced from the leased premises, or drilling operations are continuously prosecuted.~~  *RPM*

All expressed or implied covenants of this lease shall be subject to all Federal and State laws, executive orders, rules or regulations, and this lease shall not be terminated in whole or in part, nor shall lessee be held liable in damages, for failure to comply therewith if compliance is prevented by, or if such failure is the result of any such law, order, rule or regulation.
This lease shall never be forfeited or terminated for failure of lessee to perform in whole or in part any of its express or implied covenants, conditions or obligations until it shall have been first finally judicially determined that such failure exists, and lessee shall have been given a reasonable time after such final determination within which to comply with any such covenants, conditions or obligations.

It is agreed that lessee may drill or not drill on said land, as it may elect, and the consideration and rentals paid and to be paid hereunder constitute adequate compensation for such privilege.

In case the person or persons executing this lease are not all of the owners of the leased premises, then such person or persons shall be entitled only to such portion of the oil, gas royalty, delay rentals or storage rentals paid or payable in proportion to their actual interest.

It is agreed that the entire contract and agreement between lessor and lessee is embodied herein, and that no verbal warranties, representations or promises have been made or relied upon by lessor or lessee supplementing, modifying, or as an inducement to this lease.

All conditions and agreements herein contained shall be binding on the heirs, executors, administrators, successors or assigns of said parties.

**All terms contained in the following provisions shall be controlling and any conditions or terms on the printed lease which are inconsistent with these terms shall be void.**

Lessee agrees to pay Lessor a reasonable rate for all damages caused to growing crops, trees and timber caused by the drilling operations, which would include damages caused by the well location(s), road(s) to the location(s) and pipeline(s) from the well(s) on the leased premises.

Lessee will comply with the Pennsylvania statutes and regulations concerning the protection of water supplies. Lessee agrees not to use any water from Lessor's ponds, springs, or creeks without Lessor's written consent.

Lessee agrees it will protect and save and keep Lessor harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any laws or ordinances, whether occasioned by the neglect of Lessee or those holding under Lessee and will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss, damage or expense, including any injury to any person or property whomsoever or whatsoever arising out of or caused by any negligence of the Lessee or those holding under Lessee.

Surface of well location to be restored to as near as practicable to original contour of well locations.

Lessee agrees to consult with Lessor for the purpose of determining mutually acceptable well locations (and/or) access roads and pipelines from said well(s); provided, however, that it is expressly understood and agreed that Lessee shall have the right to fully develop the leased premises.

Subject to the terms provided in the paragraph titled "Reserve Gas", if Lessor resides on leased premises and elects in writing not to utilize any reserve gas, Lessee agrees to make an annual cash payment of an amount equal to the annual average price per thousand cubic feet received by the Lessee times the quantity of gas (in thousands of cubic feet) reserved to Lessor herein.

By written request to the lessee, lessor may reserve from the leased premises through any additional well drilled thereon producing gas provided the gas pressure is high enough, gas for use on said premises to the extent of 100,000 cubic feet per year, or such part thereof per year as lessor requires; subject, however, to the operation and pumping by lessee of its wells and pipelines on the premises, the lessee to make the necessary connection and lessor to assume all risk in using the gas.

IN WITNESS WHEREOF, the said parties have executed this lease the day and year first above written.

WITNESS:

_____ .......................................................(SEAL)
Michael Milliron                        Richard P. Marburger, Trustee

ATTEST:                                 PHILLIPS PRODUCTION COMPANY

_____        By: _____
                                            Senior Vice President of Operations

## INDIVIDUAL ACKNOWLEDGEMENT

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF BUTLER

On this, the 8th day of February 2007, before me Shannon M. Swift, a notary public, the undersigned officer, personally appeared, **Richard P. Marburger, Trustee of the Olive M. Marburger living trust dated February 18, 1995** known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In Testimony Whereof, I have hereunto set my hand and official seals.

_____
Notary Public

```
COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Shannon M. Swift, Notary Public
Wellsboro Boro, Tioga County
My Commission Expires July 21, 2010
Member, Pennsylvania Association of Notaries
```

## CORPORATE ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA }
                               } ss.
COUNTY OF ALLEGHENY            }

On this, the 19TH day of February, 20 07, before me, a Notary Public, the undersigned officer, personally appeared Samuel E. Fragale, who acknowledged himself to be the Senior Vice President of Operations of Phillips Production Company, a corporation, and that he as such Senior Vice President being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as Senior Vice President.

In witness whereof, I hereunto set my hand and official seal.

```
Commonwealth of Pennsylvania
NOTARIAL SEAL
BRUCE J. KERR, Notary Public
Butler Township, County of Butler
My Commission Expires April 21, 2010
```

_____
Notary Public

This lease prepared by: Jim Bourbeau Land Service, LLC, 11018 ST HWY 18, Conneaut Lake, PA 16316
When recorded return to: Phillips Production Company, 502 Keystone Drive, Warrendale, PA 15086

*Phillips Production Company*
*502 Keystone Drive*
*Warrendale, PA 15086*

Tax Parcel #160-4F31-14A1; 160-4F31-25E

## LEASE MODIFICATION AGREEMENT

MADE AND ENTERED INTO this 29th day of December, 2008, by and between

**Richard P. Marburger, Trustee of the Olive M. Marburger Living Trust**, having an address of 1477 Mars-Evans City Road, Evans City, Pennsylvania 16033, Parties of the First Part

A

N

D

**Phillips Production Company**, a Pennsylvania corporation, of 502 Keystone Drive, Warrendale, Pennsylvania 15086, Party of the Second Part.

### WITNESSETH THAT

WHEREAS, Parties of the First Part are the present lessors under that certain oil and gas lease (the "Lease") dated February 8, 2007, granted by Richard P. Marburger, Trustee of the Olive M. Marburger Trust, to Phillips Production Company, covering 97.69 acres, more or less, of land in Forward Township, Butler County, recorded in said County at Instrument No. 200706110014607; and

WHEREAS, party of the second part is the present lessee under said Lease; and

WHEREAS, the parties hereto desire to amend and modify certain provisions of said Lease.

NOW, THEREFORE, the parties hereto, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, have agreed and do hereby agree as follows:

1. That, as of the date of this Lease Modification Agreement, a unitization provision of said oil and gas lease is incorporated herein as follows:

> UNITIZATION. Lessee is hereby granted the right to pool and unitize any one or more formations under all or any part of the land described above with any other lease or leases, land or lands, mineral estates, or any of them whether owned by lessee or others, so as to create one or more drilling or production units. Such drilling or production units shall be created when in Lessee's judgment, it is necessary or advisable to develop and operate efficiently such lands. Any such pool shall not exceed 640 acres in extent and shall conform to the rules and regulations of any lawful governmental authority having jurisdiction in the premises, and with good drilling or production practice in the area in which the land is located. In the event of the unitization of the whole or any part of the land covered by this lease, lessee or designated operator shall before or after the completion of a well, record a copy of its unit operation designation in the County wherein the leased premises is located, and mail a copy thereof to the lessor. In order to give effect to the known limits of the oil and gas pool, as such limits may be determined from available geological or scientific information or drilling operations, lessee may at any time increase or decrease that portion of the acreage covered by this lease which is included in any drilling or production unit, or exclude it altogether, provided that written notice thereof shall be given to lessor promptly. As to each drilling or production unit designated by the lessee, the lessor agrees to accept and shall receive out of the production or the proceeds from the production from such unit, such proportion of the royalties specified herein, as the number of acres out of the lands covered by this lease, which may be included from time to time in any such unit, bears to the total number of acres included in such unit. The commencement, drilling, completion of or production from a well on any portion of the unit created under the terms of this paragraph shall have the same effect upon the terms of this lease as if a well were commenced, drilled, completed or producing on the land described herein. In the event, however, that a portion only of the land described in this lease is included from time to time in such a unit then a proportionate part of the delay rental, hereinafter provided, shall be paid on the remaining acreage.

2. Except as herein modified and amended, the aforesaid Lease shall remain in full force and effect in accordance with the terms and conditions contained therein.

3. This Lease Modification Agreement shall be legally binding upon, and shall inure to the benefit of, the party hereto and their respective personal representatives, heirs, successors and assigns.

IN WITNESS WHEREOF, the party to this Lease Modification Agreement have hereunto set their hands and seals as of the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Derek J. Folmer, Notary Public
Saxonburg Boro, Butler County
My Commission Expires Aug. 10, 2011
Member, Pennsylvania Association of Notaries

WITNESS:

_____
Derek J. Folmer

_____
Richard P. Marburger, Trustee of the Olive M. Marburger Living Trust

ATTEST:

_____
Asst. Secretary

Phillips Production Company

By: _____
Senior Vice President of Operations

3

I hereby CERTIFY that this document is recorded in the Recorder's Office of Butler County, Pennsylvania

Michele M. Mustello - Recorder of Deeds

COMMONWEALTH OF PENNSYLVANIA )
) SS:
COUNTY OF BUTLER )

On this 29th day of December, 2008, before me, a Notary Public, personally appeared Richard P. Marburger, Trustee of the Olive M. Marburger Living Trust, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Derek J. Folmer, Notary Public
Saxonburg Boro, Butler County
My Commission Expires Aug. 10, 2011
Member, Pennsylvania Association of Notaries

Notary Public

COMMONWEALTH OF PENNSYLVANIA :
: ss
COUNTY OF ALLEGHENY :

On this, the 30th day of December, 2008, before me, a Notary Public, the undersigned officer, personally appeared Samuel E. Fragale, who acknowledged himself to be the Senior Vice President of Operations of Phillips Production Company, a corporation, and that he as such Senior Vice President of Operations being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as Senior Vice President of Operations.

In Witness Whereof, I hereunto set my hand and official seal.

Commonwealth of Pennsylvania
NOTARIAL SEAL
BRUCE J. KERR, Notary Public
Butler Township, County of Butler
My Commission Expires April 21, 2010

Notary Public

4