IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD P. MARBURGER** *Trustee of the Olive M. Marburger Living Trust*, and **THIELE FAMILY, LP,**<br><br>Plaintiffs,<br><br>v.<br><br>**XTO ENERGY INC.**,<br><br>Defendant. | Civil Action No. 15-910<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## REPORT AND RECOMMENDATION

Cynthia Reed Eddy, United States Magistrate Judge.

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendant XTO Energy Inc.'s Motion to Dismiss [ECF No. 8] be denied.

### II. REPORT

a. Background

Plaintiffs Richard P. Marburger and the Thiele Family, LP, ("Plaintiffs") brought this suit individually and on behalf of all persons similarly situated against Defendant XTO Energy Inc., ("XTO") for allegedly wrongfully deducting post-production costs from oil and gas royalties paid to Plaintiffs by XTO. Specifically, Plaintiffs bring this action on behalf of themselves and all Pennsylvania landowners who entered into similar oil and gas leases with Phillips Production Company. The leases provide that Plaintiffs were to be paid royalties of a percentage of the proceeds the lessee received from the sale of gas, less Plaintiffs' pro rata share of any severance or excise tax. Compl. [ECF No. 1] at ¶¶ 10, 12, 16. The leases contain the following royalty clause:

1

>**ROYALTY**.  IN CONSIDERATION of the above demise . . .
>
>Should any well not produce oil, but produce gas (except storage gas) and the gas produced therefrom be sold off the said premises, the consideration to said lessor for the gas from each well completed and from which well gas is produced, metered and sold shall be as follows:
>
>**Royalty equal to one-eighth (1/8) of the proceeds received from time to time by lessee for all gas (except storage gas) produced, metered and sold, less lessor's pro rata share of any severance or excise tax imposed by any governmental body.**  Payment of said royalty shall be made on or about the 25th day of the month for all gas produced, metered and sold during the preceding month.  The time and method of producing, metering, delivering and selling the gas produced from any well on the leased premises and the amount thereof that shall be used or sold within any period of time shall be entirely within the sole discretion of the lessee.

Compl. [ECF No. 1] at ¶¶ 9-10 (emphasis added).[1]  The leases do not otherwise define the terms royalty or proceeds and do not otherwise set forth how the royalties should be calculated.

In 2011, Exxon Mobil Corporation acquired the Phillips Production Company and its affiliates.  As a consequence, Plaintiffs' leases were assigned to XTO, an affiliate of Exxon Mobil.  After this assignment, XTO began to deduct various post-production expenses from Plaintiffs' royalties.  In industry parlance, the expenses of production of oil and gas refer to those costs incurred in getting the product to the surface. *See Kilmer v. Elexco Land Servs., Inc.*, 605 Pa. 413, 428, 990 A.2d 1147, 1157 (2010).  By contrast, "post-production" expenses or costs have been delineated as the costs of getting the product from the wellhead to the point of sale. *Id*.

Plaintiffs initiated the instant action on July 14, 2015 claiming that XTO breached the leases by deducting post-production costs and expenses not explicitly permitted by the leases.

---

[1]  While there are numerous leases at issue in this case, the leases contain identical or substantively similar language pertaining to the royalty provision.  Therefore, this Report will only outline the language of the Marburger lease.

2

Plaintiffs also seek declaratory relief to declare that any expenses other than excise or severance taxes may not be considered in calculating and paying gas royalties under the leases.

Defendant presently moves to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendant argues that the Pennsylvania Supreme Court's ruling in *Kilmer, supra,* and the courts applying its holding, prevent Plaintiffs from relief because *Kilmer* explicitly allows gas companies to net out post-production costs when calculating a lessor's royalty. Specifically, Defendant asserts that *Kilmer* held that the term "royalty" as used in the oil and gas industry permits the net-back method of calculating royalties, unless there is express language in the lease to the contrary. Under the "net-back method" of calculating royalties, as Defendant states, post-production costs may be deducted from the value of the gas sold at the point of sale in order to obtain the value of gas at the wellhead where it is produced.

Plaintiffs respond that *Kilmer* is not binding on this breach of contract action, contending that *Kilmer* held only that parties may agree to deduct post-production costs in royalty calculations in the context of determining whether the leases in question violated Pennsylvania's Guaranteed Minimum Royalty Act ("GMRA"), 58 P.S. § 33 (which has since been repealed and re-codified in the Oil and Gas Lease Act at 58 P.S. § 33.3, effective September 9, 2013).[2] Plaintiffs argue that because they do not assert that Defendant violated the GMRA, but rather breached the leases by deducting post-production costs from royalties when the lease did not explicitly permit such deductions, *Kilmer's* holding is inapplicable.

---

[2]  Although this statutory minimum royalty provision is now located in the Oil and Gas Lease Act at 58 P.S. § 33.3, the parties refer to it in their briefs by its previous name, the GMRA. Additionally, all of the cases cited by the parties, including *Kilmer*, interpreted this provision when it was located in the GMRA. Therefore, because these two provisions are virtually identical, for purposes of this Report and for ease of reference, the Court will also refer to this provision as the GMRA.

b.  Standard of Review

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010).  Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted).  A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s]

that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents <u>integral to or explicitly relied upon</u> in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997) Accordingly, the Court may take into consideration the oil and gas leases, addendums and lease amendments attached to the complaint without converting Defendant's motion into one for summary judgment.

    c.  Discussion

Here, the issue to determine is whether the Pennsylvania Supreme Court's definition of the term "royalty," defined in the context of the GMRA state statute, applies broadly to the royalty provisions of the leases in controversy. For the reasons that follow, the Court finds that *Kilmer* does not foreclose the instant breach of contract action.

The parties seek to define the term "royalty" and the royalty provision as it is employed in the leases. Again, the royalty provision states that Plaintiffs are entitled to a royalty equal to one-eighth of the proceeds received from the sale of gas less the Plaintiffs' pro rata share of any applicable taxes. The leases do not define the terms "royalty" or "proceeds," and are silent on the deduction of post-production costs in the calculation of royalties. Plaintiffs allege that XTO breached its leases by deducting post-production costs from the royalties paid to Plaintiffs under the leases because the leases do not explicitly allow the deduction of post-production costs from royalty payments. Plaintiffs claim that their royalties should have been calculated from the gross

proceeds from the sale of gas without making any deduction for post-production costs, instead of being calculated from the net proceeds and deducting Plaintiffs' share of post-production costs from royalties.

XTO responds that the term "royalty" in the oil and gas industry has been defined by the Pennsylvania Supreme Court as "[t]he landowner's share of production, free of expenses of production." *Kilmer*, 990 A.2d at 1157 (2010) (quoting Howard R. Williams & Charles J. Meyers, *Manual of Oil and Gas Terms* § R (Patrick H. Martin & Bruce M. Kramer eds., 2009)). Further, XTO argues that the Pennsylvania Supreme Court's adoption of the net-back method of calculating oil and gas royalties should be applied to the leases here, as they are silent as to the term "royalty" and such a definition is consistent with industry standard.

In *Kilmer*, Pennsylvania landowners sought a declaratory judgment action to void oil and gas leases as violating the GMRA, which as discussed above, mandates that a landowner receives a minimum one-eighth royalty of all oil or natural gas removed or recovered from the leasehold. 58 P.S. § 33.3.[3] The leases in *Kilmer*, unlike the leases here, explicitly permitted the deduction of certain post-production costs in calculating royalties. *Kilmer*, 990 A.2d at 1151-57. The landowners argued, however, that the deduction of post-production costs from their royalties left them with less than a one-eighth share of the proceeds from the sale of the oil and gas and thus violated the GMRA. *Id.* The Pennsylvania Supreme Court exercised its extraordinary jurisdiction to interpret the term "royalty" as used in the GMRA, as that term was not defined in the statute, nor did the statute provide a method for calculating royalties. The specific issue decided by the Court was whether the GMRA permitted contracting parties to determine the amount of royalties under an oil and gas lease by utilizing the "net-back" method. *Id.* Under the

---

[3] Previously located at 58 P.S. § 33.

6

net-back method, royalties are calculated as "one-eighth of the sales price of the gas minus one-eighth of the post-production costs of bringing the gas to the market." *Id*. at 1149.

After explaining the deregulation of the oil and gas industry and the enactment of the GMRA, the Court defined the term "royalty" under Pennsylvania rules of statutory construction[4] as "[t]he landowner's share of production, free of expenses of production." *Id*. at 1157 (citation omitted). It then concluded that "the GMRA should be read <u>to permit</u> the calculation of royalties at the wellhead, as provided by the net back method in the Lease[.]" *Id*. at 1158 (emphasis added). In so finding, the Court cited numerous oil and gas treatises and found in the oil and gas industry, "[a]lthough the royalty is not subject to costs of production, usually it is subject to costs incurred after production, e.g., production or gathering taxes, costs of treatment of the product to render it marketable, costs of transportation to market." *Id*. at 1157 (quoting Howard R. Williams & Charles J. Meyers, Manual of Oil and Gas Terms § R (Patrick H. Martin & Bruce M. Kramer

---

[4] The rules of statutory interpretation under Pennsylvania law and applied by the Pennsylvania Supreme Court in *Kilmer* are as follows:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
    (1) The occasion and necessity for the statute.
    (2) The circumstances under which it was enacted.
    (3) The mischief to be remedied.
    (4) The object to be attained.
    (5) The former law, if any, including other statutes upon the same or similar subjects.
    (6) The consequences of a particular interpretation.
    (7) The contemporaneous legislative history.
    (8) Legislative and administrative interpretations of such statute."

1 Pa. Stat. and Cons. Stat. Ann. § 1921 (West).

eds., 2009)) (additional citations omitted).  Additionally, it found

> "[w]hile a lease may make the amount of royalty dependent on the proceeds, generally the royalty is not payable from gross profit but from the net amount remaining after deduction of certain production and development costs." 17 Williston on Contracts §50:60 (4th ed. 2009).  Consistent with this definition, the lease at issue only provides for the lessor to share in the post-production costs, and charges the lessee with all the production costs.

*Id*. at 1157-58.  The Court held that it was not a violation of the GMRA for oil and gas producer to calculate royalties as one-eighth of the sale price of the gas minus one-eighth of the post-production costs as provided in the leases.  *Id*. at 1158.

XTO advocates for the broad application of *Kilmer's* holding to this case.  XTO would have this Court extend *Kilmer's* interpretation of the term royalty in the context of the GMRA to apply situations like this where the leases do not specify the method to be utilized for calculating royalties.  However, Plaintiff urges this Court to narrowly construe the holding of *Kilmer* to only apply in the statutory interpretation context and not in a common law breach of contract action where the leases in question do not explicitly permit the deduction of post-production costs from the lessor's royalties.

The Court finds that the definition of royalty in *Kilmer* does not foreclose Plaintiffs here from bringing their breach of contract action.  The leases in question do not explicitly define the term royalty and the royalty provision merely provides that royalties are to be calculated as one-eighth of the amount of sale of proceeds received for all gas produced, metered and sold, less the lessor's pro rata share of any applicable taxes.  In *Kilmer*, the Court was asked to define the term "royalty" under the GMRA and Pennsylvania's Statutory Construction Act, and not under the principles of contract interpretation.  As to the deduction of post-production costs, the leases in *Kilmer* explicitly accounted for such deductions from royalties, while the instant leases are silent

as to whether the post-production costs can be deducted utilizing the net-back method. Additionally, XTO argues that the cases following *Kilmer* have applied its net-back royalty calculation definition to all Pennsylvania leases. However, all of the cases cited by XTO for this proposition involved leases which explicitly allowed for the deduction of post-production costs and/or utilizing the net-back method to calculate royalties in context with the GMRA statute. *See Pollock v. Energy Corp. of Am.*, No. CIV.A. 10-1553, 2011 WL 3667385, at *1 (W.D. Pa. Aug. 22, 2011) (leases provided that the royalties "were to be calculated utilizing the net-back method"); *Ulmer v. Chesapeake Appalachia, LLC*, No. 4:08-CV-2062, 2011 WL 1344596, at *3 (M.D. Pa. Apr. 8, 2011) (leases provided for "different post-production costs" not expressly sanctioned by *Kilmer*); *Julia v. Elexco Land Servs., Inc.*, No. CIV.A. 3:09-CV-590, 2010 WL 1904245, at *1 (M.D. Pa. May 11, 2010) (leases provided for post-production costs and allegedly violated of the GMRA); *Puza v. Elexco Land Servs., Inc.*, No. CIVA 3:09-CV-589, 2010 WL 1791150, at *1 (M.D. Pa. May 3, 2010) (same); *Carey v. New Penn Expl.*, LLC, No. CIVA 3:09-CV-188, 2010 WL 1754440, at *1 (M.D. Pa. Apr. 28, 2010) (same); *Kropa v. Cabot Oil & Gas Corp.*, 609 F. Supp. 2d 372, 379 (M.D. Pa. 2009) *reconsideration granted in part*, 716 F. Supp. 2d 375 (M.D. Pa. 2010) (declaratory relief seeking lease violation under the GMRA denied after *Kilmer* decision where lease provided deduction of all post-production expenses); *Katzin v. Cent. Appalachia Petroleum*, 2012 PA Super 10, 39 A.3d 307, 308 (2012) (seeking to invalidate lease which provided royalty based on "revenue realized" under the GMRA); *Lauchle v. The Keeton Grp.*, 4:08-cv-1868, Memo. Order of 10/6/2010 at 4 (M.D.Pa. Oct. 6, 2010) (leases provide for deduction of post-production costs and alleged violation of the GMRA).

Because of these obvious differences between the issues in the instant case and the issues decided in *Kilmer*, *i.e*., issue of statutory construction versus the issue of contract interpretation,

9

and the fact that all other cases relying on *Kilmer* asserted violations of the GMRA and/or that the lease at issue explicitly permitted the deduction of post-production costs from royalties, this Court declines to conclude that *Kilmer's* definition of royalty in the context of the GMRA precludes the instant matter where Plaintiffs have alleged a breach of contract action for the deduction of post-production costs from royalties in lease that is silent on said allocation of costs.

Therefore, for the purposes of this motion, Plaintiffs have adequately stated a breach of contract claim.  Plaintiffs' leases provide that they are due a one-eighth royalty on the proceeds of the sale of their gas less allocated taxes, and allege that they received less than that because XTO wrongfully deducted post-production costs from their royalties.  Unlike the plaintiffs in *Kilmer*, Plaintiffs here do not claim that this deduction of post-production costs violated the GMRA.  Instead, Plaintiffs simply contend that XTO, by deducting post-production costs when calculating royalties, breached the express terms of the leases.  XTO has failed to show that *Kilmer* forecloses such a claim when the leases do not specify the method for calculating royalties.  Whether these leases in fact allowed for deduction of said costs and whether the royalty provision in the leases contains any ambiguities are questions that should be answered at a later day after a record is fully developed.  However, at this early stage of the proceedings, when drawing all reasonable inferences in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly stated a claim upon which relief may be granted.

Accordingly, it is respectfully recommended that Defendant XTO Energy Inc.'s Motion to Dismiss [ECF No. 8] be denied.

    d. Conclusion

In accordance with the foregoing report, it is respectfully recommended that Defendant's motion to dismiss Plaintiffs' complaint be denied.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until February 9, 2016, to file objections to this report and recommendation. Unless Ordered otherwise by the District Judge, responses to objections are due February 23, 2016. Failure to file timely objections may constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: January 26, 2016.

By the Court,
s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: Honorable David S. Cercone
United States District Judge
*via electronic filing*

*Attorneys of record via CM/ECF electronic filing*